William C. **FRAZIER,** Frazier Industries, Inc. and Airburst Technologies, LLC, Plaintiffs,

v.

**LAYNE CHRISTENSEN COMPANY and Prowell Technologies, Ltd., Defendants.**

No. 04–C–315–C.

United States District Court, W.D. Wisconsin.

Aug. 4, 2005.

Jane C. Schlicht, Milwaukee, WI, for Plaintiffs.

Bruce A. Schultz, Coyne Niess Schultz Becker & Bauer, Madison, WI, for Defendants.

## OPINION and ORDER

CRABB, District Judge.

Plaintiffs William Frazier, Frazier Industries, Inc. and Airburst Technologies, LLC have moved for reconsideration of the order granting summary judgment to defendants Layne Christensen Company and ProWell Technologies, Ltd. on plaintiffs' claims of patent infringement, inducement of infringement and contributory infringement. Plaintiffs contend that defendant Layne Christensen's processes for rehabilitating water wells, marketed as "BoreBlast" and "BoreBlast II," infringed plaintiffs' U.S. Patent No. 5,579,845 (the '845 patent) and that defendant ProWell Technologies, whose air impulse generator is used in the BoreBlast II process, is liable for inducing defendant Layne Christensen to infringe the '845 patent and for contributory infringement of the '845 patent. Plaintiffs seek reconsideration on two grounds: (1) the court erred in construing claims 1 and 19 of the '845 patent to require the "monitoring" step to precede the "adjusting" step and (2) the court granted summary judgment to defendants on the basis of an incomplete factual record that is the product of defendants' failure to provide timely and complete discovery. (From this point forward, any use of the word "defendant" refers only to Layne Christensen.) Oral argument on the motion was held on July 22, 2002.

For the reasons stated below, plaintiffs' motion will be granted in part and denied in part. Plaintiffs have not shown that the court erred in claim construction. Therefore, I will deny plaintiffs' motion with

respect to construction of claims 1 and 19 of the '845 patent. Plaintiffs' motion will be granted with respect to their claims of infringement, contributory infringement and inducement of infringement. Although counsel for both sides have been less than exemplary in conducting this litigation, defendant committed the more serious offense by failing to provide complete, timely disclosure of all documents relevant to the question of infringement. As a sanction for its conduct, defendant will be barred from contesting infringement of the '845 patent with respect to applications of the BoreBlast and BoreBlast II processes that occurred before January 21, 2005 and for which defendant did not produce any documentation in response to plaintiffs' discovery requests before filing its motion for summary judgment on January 21, 2005. This case will proceed to trial on damages for presumed infringement, plaintiffs' claims of contributory infringement and inducement of infringement against defendant ProWell Technologies, defendants' counterclaims of invalidity and unenforceability of the '845 patent and plaintiffs' claims of unfair competition under state and federal law and tortious interference with business relations. Each of the parties will bear its own costs associated with the motion for reconsideration.

As I indicated at oral argument, I am disappointed in the way counsel for the parties in this case have conducted themselves. Each side has complicated this case unnecessarily; defendants did so by dragging their feet in the discovery process and plaintiffs by failing to inform the court adequately of the problems they were having in obtaining discovery.

### A. Claim Construction

Plaintiffs argue that the court's construction of claims 1 and 19 was erroneous because the court assumed that the means for generating the waveforms could be adjusted only after the "monitoring" step had been performed. They contend that before the means for generating "pressure waveforms" (claim 1) or "percussive energy" (claim 19) is "activated" (claim 1) or "initiated" (claim 19), the well is measured or viewed by video and adjustments are made on the basis of those observations. According to plaintiffs, "adjustments are always required when the well is viewed, prior to percussive impact." Plts.' Br., dkt. # 177, at 42. At oral argument, plaintiffs elaborated on this statement by noting that the person operating the Bore-Blast or BoreBlast II tool must set the parameters at which the tool will operate before it is activated. Plaintiffs argue that these initial, pre-activating/initiating settings read on the "adjusting" limitation. Moreover, "after monitoring, adjustments may not be needed" because the waveforms might be effective in removing the impediments after only one application of the process. *Id.* Therefore, the "adjusting" step is always performed before the "activating" or "initiating" and "monitoring" steps but may not be performed after them.

Plaintiffs' construction is at odds with the language used to describe the "adjusting" step in claims 1 and 19. Claim 1 describes the "adjusting" step as follows: "adjusting the frequency and amplitude of waveforms generated to meet well performance characteristics." Because the adjustments are made to the waveforms, the "adjusting" step can be performed only after the waveforms have been generated. The same reasoning applies to claim 19, which describes the "adjusting" step in the following terms: "adjusting said percussive energy whereby the mechanical action of said energy propagating within said bore improves water production." Claim 19, like claim 1, contemplates adjustments being made after percussive energy has been generated. Thus, at a minimum, the "adjusting" step in claims 1 and 19 can

occur only after the "activating" step in claim 1 and the "initiating" step in claim 19. Plaintiffs assume incorrectly that any adjustments made to the generating means automatically satisfy the "adjusting" limitation regardless when they occur.

In granting summary judgment to defendants, I concluded that the "adjusting" step is performed after the "monitoring" step in claims 1 and 19 because only by monitoring the effect of the waveforms would one know whether and how to perform the "adjusting" step to insure successful rehabilitation. This logical relationship between the two steps exists despite the lack of an explicit statement that one must follow the other. Plaintiffs argue that this construction was erroneous because there is no language in the claims, specification or prosecution history of the '845 patent that requires this limiting construction. Plaintiffs are correct that no mandatory language exists in the '845 patent to connect the "monitoring" and "adjusting" steps in sequential order. However, such language is not necessary to impose a sequence limitation on claim language. If two steps in a method claim are related such that one must precede the other as a matter of logic or grammar, a sequence limitation is appropriate. *Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1369 (Fed.Cir.2003). In this case, the "monitoring" and "adjusting" steps are related logically such that the "monitoring" step must occur before the "adjusting" step to accomplish the objective of the patented process. As I noted in the summary judgment order, the specification "reinforces the logical interpretation of the relationship between the 'monitoring' and 'adjusting' steps: the effect of the waveforms is monitored so as to facilitate proper adjustment of the waveforms to complete the rehabilitation process." Op. & Order, dkt. # 175, at 30. Even plaintiffs' proposed construction, which would

allow the "monitoring" and "adjusting" steps to be performed before the generating means is activated or initiated, rests on the assumption that adjustments are not made blindly but instead on the basis of observations or measurements of the well's interior.

Finally, plaintiffs argue that the court erred in refusing to consider the declaration of Fletcher Driscoll on the ground that plaintiffs had not made the statements in the declaration the subject of proposed findings of fact. Plaintiffs say that they cited the declaration to support their opposition to defendant's proposed findings of fact. They argue that the court should have considered Driscoll's statement that persons experienced in the well rehabilitation field would know that the "activating," "monitoring" and "adjusting" steps are not always performed in sequence. Driscoll's declaration constitutes extrinsic evidence, which may be used to help the court understand patent claims if the patent documents are ambiguous but which cannot be used to change or contradict unambiguous claim language. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1584 (Fed.Cir.1996). In the summary judgment order, I noted that Driscoll's declaration provides "only lukewarm support for plaintiffs' position" because it describes the steps of well rehabilitation processes in the same order as the steps of the process in claims 1 and 19: application of the process, monitoring of progress, and adjustment of the process to ensure successful rehabilitation. Op. & Order, dkt. # 175, at 31–32. Although Driscoll states that the steps in claims 1 and 19 do not need to be performed in sequence, he describes them in sequence three times in his declaration. Driscoll Dec., dkt. # 104, at ¶¶ 5, 12 and 17. Thus, even if I had considered his declaration, I would still have construed claims 1 and 19 to set forth

a sequence of steps that are performed in the order in which they are written.

## B. *Discovery*

Plaintiffs' second ground for reconsideration is that defendant failed to provide complete and timely disclosure of documents concerning applications of the BoreBlast and BoreBlast II processes. They contend that documents disclosed by defendants after the summary judgment motions were filed demonstrate that the BoreBlast and BoreBlast II processes infringe the '845 patent. In addition, plaintiffs contend that they still have not received documents concerning BoreBlast or BoreBlast II jobs that were performed in Orange County, California; Normal, Illinois; and Nebraska. Defendant contends that plaintiffs have misrepresented its efforts to turn over documents, that some of the documents plaintiffs characterize as "newly discovered evidence" were in their possession months before defendant filed for summary judgment and that none of the evidence plaintiffs rely on in requesting reconsideration demonstrates that BoreBlast or BoreBlast II infringe the '845 patent.

Plaintiffs issued their first set of interrogatories and requests for production of documents on August 16, 2004. Plaintiffs asked defendant to identify each location in the United States where the BoreBlast and BoreBlast II processes had been sold. Aff. of Jane C. Schlicht, dkt. # 180, Exh. 1. In addition, plaintiffs asked defendant to turn over documents concerning sales activities for BoreBlast and BoreBlast II in the United States. *Id.* Defendant responded to these requests by objecting to them as "oppressive, overly broad and unduly burdensome" and by stating that the vast majority of responsive documents had been identified and that "ongoing efforts are underway to locate additional documents, and this response will be supplemented if and when additional documents

have been located and identified." *Id.* at Exh. 3. Defendant's responses were due September 18, 2004 but plaintiffs' counsel voluntarily extended this deadline to September 28, 2004. According to plaintiffs, defendant's first production of documents occurred on October 14, 2004.

It is not clear where defendant keeps records of its BoreBlast and BoreBlast II treatments. At oral argument, counsel for defendant indicated that it does not have one location at which it keeps invoices for each well rehabilitation procedure it performs; therefore, it had to rely on employees at each of its 35 branch offices to search the files located at those offices for documents concerning BoreBlast or BoreBlast II jobs. This representation conflicts with deposition testimony given by Bob Ereth, an employee of defendant in its Fontana, California office. In his deposition, Ereth stated that an invoice is created for each BoreBlast or BoreBlast II procedure and that copies of these invoices are sent electronically to defendant's headquarters in Mission Woods, Kansas. Aff. of Jane C. Schlicht, dkt. # 180, Exh. 28. Defendant has not refuted Ereth's statement with an affidavit or other sworn testimony. However, regardless where the relevant documents were located, defendant was obligated either to collect and disclose all documents responsive to plaintiffs' requests in a timely manner or to seek a ruling from this court on its objections to the requests.

Defendant filed its summary judgment motion on January 21, 2005. In support of its motion, defendant submitted declarations from several of its employees, including James Troutt, who works as a research and development projects manager. Attached to Troutt's declaration was a list of 92 job sites at which defendant had performed either the BoreBlast or BoreBlast II processes from 1999 to August 25, 2004.

Plaintiffs contend that they had received either no documentation or only partial documentation for some of the jobs on the list at the time defendant moved for summary judgment. Defendant maintains that all of the documents submitted with the Troutt declaration had been disclosed to plaintiffs before it filed for summary judgment.

At this point in the case, plaintiffs should have filed a motion pursuant to Fed.R.Civ.P. 37 or 56(f) to compel production of documents they believed were being withheld or to obtain additional time to respond to the summary judgment motions. Plaintiffs did neither. At oral argument, plaintiffs' counsel stated that she did not file a motion to address the incomplete discovery because she did not know exactly which documents she was missing. Plaintiffs' decision to remain silent was precisely the wrong course of action; with only 21 days to respond to the motions, counsel should have alerted the court as soon as they realized they had not received documents concerning all of the job sites listed in the Troutt declaration. The preliminary pretrial conference order instructed them to do exactly that. Order, dkt. #31, at 5 ("This court also expects the parties to file discovery motions promptly if self-help fails."). The court would have been receptive to a request for additional time to respond to the summary judgment motions regardless of the fact that plaintiffs could not pinpoint exactly the documents defendants had not provided. More important, a motion to compel or to suspend briefing would have prevented the court from delving into the summary judgment motions, which became ripe on February 22, 2005.

Instead of filing a motion to remedy the discovery problems, plaintiffs filed proposed findings and briefs in opposition to the summary judgment motions consistently with the briefing schedule set forth in the preliminary pretrial conference order. In doing so, plaintiffs signaled to the court that they were ready for a ruling on the merits of their claims. Plaintiffs included one paragraph at the end of their twenty-six page brief concerning defendants' failure to produce documents for some of the jobs noted in the Troutt affidavit. However, they did not ask the court to postpone a decision on the summary judgment motions; instead, they stated only that "[d]efendants' failure to produce these documents and failure to timely disclose the identity and knowledge of these [ ] witnesses has seriously impaired Plaintiffs' ability to respond to these arguments." Plts.'s Br., dkt. #115, at 25. What effect did plaintiffs think this statement would have?

Plaintiffs contend that they made other efforts to inform the court that they were having difficulty obtaining documents from defendants. On March 4, 2005, they filed a motion for leave to file a surreply brief on the basis of discovery they had received from defendants after the close of briefing on the summary judgment motions. In a telephone conference on April 20, 2005, plaintiffs' counsel stated that some issues regarding discovery had not been resolved. Finally, on April 22, 2005, plaintiffs filed a motion for leave to subpoena records from defendant's customers, which the magistrate judge granted in an order entered on May 4, 2005. Plaintiffs took these actions after the close of briefing on the summary judgment motions but they did not ask the court to postpone a ruling on the motions. This court is not in the business of reading tea leaves; to obtain relief, parties must request it. Merely describing the problems plaintiffs are having in obtaining timely and complete discovery is not enough to put the court on notice that something needs to be done.

In a letter to counsel for defendant dated February 17, 2005, plaintiffs listed

approximately thirty locations where defendant had performed BoreBlast or BoreBlast II treatments and for which defendant had not provided any documents. This letter was written four days before plaintiffs' responses to the summary judgment motions were due and nearly five months after defendants responded to plaintiffs' first set of discovery requests. Aff. of Jane C. Schlicht, dkt. # 180, Exh. 15. Plaintiffs issued a second set of interrogatories and requests for production of documents on March 22, 2005, in which they asked defendant to provide all documents relating to BoreBlast and BoreBlast II. Defendant responded by stating that all relevant documents had been produced. Plaintiffs then issued open records requests to municipalities for which defendant had performed well rehabilitations and subpoenas to a number of defendant's private sector customers. From the open records requests and subpoenas, as well as depositions of several employees of defendant, plaintiff has learned that defendant performed well rehabilitations on 39 wells in Nebraska, 11 wells in Normal Illinois, and 37 wells for Dow Chemical in Orange County, California. Plaintiffs contend that they have not received any documents concerning the Orange County and Nebraska projects and only partial documents for the Normal, Illinois rehabilitations.

Defendant has offered a variety of excuses for its failure to disclose certain documents. It contends that documents concerning BoreBlast and BoreBlast II treatments in California were destroyed in a flood and that efforts to rehabilitate those documents have proven unsuccessful. On April 7, 2005, counsel for defendant informed plaintiffs that documents concerning rehabilitations in Kentucky and Indiana could not be turned over because they had been transferred to another company as part of the sale of some of its business. Finally, with respect to documents concerning rehabilitation of the 39 wells in Nebraska, defendant indicated at oral argument that it was unaware that one of its employees in Nebraska, Jesus Guevara, kept work orders for these wells at his home.

The parties were warned in the preliminary pretrial conference order that they must "undertake discovery in a manner that allows them to make or respond to dispositive motions within the scheduled deadlines." Dkt. # 31, at 3. Cooperation during the discovery process is essential to the "just, speedy and inexpensive determination" of a civil action. Fed.R.Civ.P. 1. This is not to say that parties must spare no expense and scour the four corners of the earth for discoverable material; however, they must make genuine efforts to accommodate each other.

■ Because I am convinced that defendant Layne Christensen did not provide complete and timely disclosure of documents requested by plaintiffs, I will grant plaintiffs' motion for reconsideration and vacate the court's summary judgment opinion and order as it pertains to the questions of infringement. Because my conclusion that defendant had not infringed the '845 patent was the sole justification for granting summary judgment in favor of defendant ProWell Technologies on plaintiffs' claims of contributory infringement and inducement of infringement, that portion of the opinion and order must be vacated as well. As a sanction for defendant's failure to provide complete discovery in a timely manner, defendant will be barred from contesting infringement of the '845 patent with respect to all BoreBlast and BoreBlast II jobs that occurred before January 21, 2005 and for which defendant did not produce any documentation before filing its motion for summary judgment on January 21, 2005. Fed. R.Civ.P. 37(b)(2)(A). Defendant may con-

test infringement with respect to job sites for which it disclosed at least some documents before January 21, 2005 and with respect to any applications of its processes that occurred after January 21. Any party may request a pretrial determination of job sites for which defendant will be able to contest infringement. This case will proceed to trial on damages for presumed infringement, plaintiffs' claims of contributory infringement and inducement of infringement, defendants' counterclaims of invalidity and unenforceability of the '845 patent and plaintiffs' claims of unfair competition under state and federal law and tortious interference with business relations.

## ORDER

IT IS ORDERED that the motion for reconsideration filed by plaintiffs William C. Frazier, Frazier Industries, Inc. and Airburst Technologies, LLC is GRANTED in part and DENIED in part. The summary judgment order in this case is VACATED with respect to the issues of infringement, contributory infringement and inducement of infringement. Each of the parties shall bear its own costs associated with the motion for reconsideration.